SINGER CASHMAN LLP
  Benjamin L. Singer (Bar. No. 264295)
  bsinger@singercashman.com
  Evan N. Budaj (Bar No. 271213)
  ebudaj@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, CA  94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Plaintiff Software Research, Inc.*

RYAN J. MARTON (SBN 223979)
ryan@martonribera.com
CAROLYN CHANG (SBN 217933)
carolyn@martonribera.com
PHILLIP J. HAACK (SBN 262060)
phaack@martonribera.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel.: (415) 360-2511

*Attorneys for Defendant Zoho Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SOFTWARE RESEARCH, INC., <br><br>            Plaintiff, <br><br> v. <br><br> ZOHO CORPORATION AND DOES 1 THROUGH 10, <br><br>            Defendants. | CASE NO. 5:22-CV-5859-EJD <br><br> **JOINT CASE MANAGEMENT STATEMENT AND FED. R. CIV. P. 26(F) REPORT** <br><br> Date Filed:   October 7, 2022 <br> CMC Date:    January 19, 2023 <br> Trial Date:    None set |

1  Plaintiff Software Research, Inc. ("Plaintiff" or "SRI") and Defendant Zoho Corp. ("Defendant" or "Zoho") (collectively, "the Parties") submit this Joint Case Management Statement and Fed. R. Civ. P. 26(f) Report, pursuant to the Court's Order Setting Initial Case Management Conference and ADR Deadlines; Standing Order for All Judges of the Northern District of California; Federal Rule of Civil Procedure 26(f); and Civil Local Rule 16-9.

**1.   JURISDICTION & SERVICE**

This is an action for pecuniary and injunctive relief for Defendants' infringement of United States Patent Nos. 7,757,175; 8,327,271; 8,392,890; 8,495,585; 8,650,493; 8,984,491; and 10,489,286 (collectively, the "Asserted Patents") arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. (*See generally* D.I. 1.) This Court has subject matter jurisdiction over Plaintiff's patent claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

SRI served Defendant on or about November 11, 2022. (*See* D.I. 9.) While the true identities of Defendants Does 1 through 10, inclusive, are presently unknown to SRI, SRI is informed and believes that such fictionally named Doe Defendants are directors, officers, employees, representatives, and/or agents of Defendants who participated and/or are currently participating in Defendants' infringement. SRI will seek leave to amend its complaint to name such individuals when their true identities become known through discovery or further investigation.

No issues exist regarding personal jurisdiction or venue.

**2.   FACTS**

SRI's Position:

As the global economy has moved away from traditional brick and mortar business and into the digital age, a company's fortunes can rise and fall with the functionality and performance of its websites. An enterprise can lose millions in revenue if its website is down even briefly, its shopping cart or checkout processes are malfunctioning, or its pages fall victim to any of a number of other glitches arising from anything from simple mistake to sophisticated malware. That internet infrastructure, programming languages, and other website technology continue to grow by leaps and bounds at an ever-increasing pace makes identifying performance issues—already a tricky exercise—more complicated virtually by the day.

SRI, a San Francisco tech company formed in 1978 by Edward F. Miller, Ph.D., exists to develop, refine, and commercialize website performance and functionality testing solutions that can keep up with the relentless advance of internet technology. In the decades since founding SRI, Dr. Miller has personally conceived of, developed, and patented a number of revolutionary innovations that dramatically advanced the start of the art of website performance testing. He is considered by many as a luminary in the field.

The Asserted Patents issued to Dr. Miller (with SRI as his assignee) only after the United States Patent Office undertook a rigorous review of the hundreds of pieces of prior art cited in Dr. Miller's applications. Further confirming the significance of SRI's intellectual property as foundational to the modern website testing industry, the Asserted Patents have been forward-cited approximately 200 times since issuance.

Thousands of customers—including Google, American Express, Intel, Microsoft, Cisco, IBM, Lockheed Martin, Princeton University, and Verizon—have purchased and employed SRI's offerings embodying one or more of the Asserted Patents, including but not limited to eValid™, in order to ensure that their websites function properly and continue to generate revenue. At its peak, SRI generated millions in annual revenues. But since that time, rampant infringement has decimated SRI's business, leaving SRI with no choice but to enforce its right to keep others from using Dr. Miller's inventions to compete against SRI.

Defendants offer website testing products, such as its Site24x7 and Applications Manager products, that infringe each of the Asserted Patents.

Regarding infringement, Zoho seeks to argue below that limitations and definitions lifted from preferred embodiments of the inventions of the Asserted Patents should be imported into the claims themselves—essentially arguing that because Site24x7 and/or Applications Manager are (according to Zoho) not the preferred embodiment of the Asserted Patents, they cannot infringe. But this argument is legally infirm and fails the most basic review of claim construction and patent infringement principles. SRI's upcoming Disclosure of Asserted Claims and Infringement Contentions, claim construction briefing, expert reports, and trial testimony will demonstrate Zoho's

1  infringement under the proper interpretation of the claims at issue, including the claim term "test-
2  enabled browser."
3        Furthermore, and perhaps even more important, while SRI's Complaint provides notice of
4  exemplary claims infringed by Zoho, not all claims of the Asserted Patents require a "test-enabled
5  browser." SRI's upcoming Disclosure of Asserted Claims and Infringement Contentions will define
6  the scope of this case and the patent claims at issue. To the extent SRI's upcoming Disclosure of
7  Asserted Claims and Infringement Contentions allege Zoho's infringement of claims that do not
8  require a "test-enabled browser," Zoho's arguments below are also wholly inapplicable to those
9  claims. SRI has asserted these claims in past cases filed in this Court and at this time intends to do so
10 again against Zoho in this matter.
11       Zoho's (vague) arguments regarding invalidity and unenforceability also fail, on both legal
12 and factual grounds. SRI is no stranger to arguments regarding the alleged prior art status of its own
13 products and marketing materials. As discovery in this matter will show, (1) any software SRI offered
14 for sale or sold prior to the statutory bar did not embody the asserted claims of the Asserted Patents;
15 and (2) any announcements made regarding future or upcoming functionality of SRI's yet-to-be-
16 released software made prior to the statutory bar were forward-looking and prophetic, and in at least
17 some cases described functionality that had been only conceptualized but not yet invented or
18 implemented.
19 Defendants' Position:
20       SRI's current lawsuit is just one in a long series of what appear to be meritless patent
21 enforcement suits designed to coerce nuisance value settlements as opposed to substantive resolution
22 on the merits. SRI has filed at least 17 other lawsuits asserting its patents – all of which appear to
23 have settled early before substantive litigation. Zoho is just the most recent target.
24       Notably, almost two years before filing suit (November 13, 2020) SRI sent a letter to Zoho
25 asserting that two Zoho products (Site 24x7 and Application Manager) "may incorporate technology
26 patented by SRI."  The letter identified the seven SRI patents asserted in the current case and asked
27 Zoho to review the patents "to determine if Zoho would benefit from a license to SRI's intellectual
28 property."  SRI's letter did not explain how any claim of SRI's patents mapped to any part of Zoho's

products. In response to this letter, on December 24, 2020, Zoho sent a letter to SRI requesting that SRI explain how any of its patent claims map to any Zoho product. SRI never responded. Instead, nearly two years later it filed this lawsuit. And, just like its letter from 2020, SRI's Complaint fails to explain how any Zoho product meets the limitations of any single claim of the seven asserted patents. Instead, SRI merely recites functionality allegedly performed by Zoho products without any explanation of how such functionality meets any given claim limitation.

SRI's failing here is likely due to the fact that it does not have a viable infringement theory against Zoho. SRI accuses two Zoho products (Site 24x7 and Application Manager) neither of which could possibly infringe the asserted patents. For example, every asserted claim of the patents-in-suit requires that the accused product be a "test-enabled browser." This is not reference to commonly available web browsers, but instead is a reference to different type of browser that emulates a pre-existing browser and that additionally has embedded website testing capabilities. In describing this test-enabled browser, the patents state that the "test-enabled browser 100 makes use of Internet Explorer (I.E.) base library. In this regard, the test enabled browser100, in effect, emulates an IE browser but further provides the capability to perform the automated analysis and testing of websites." '175 Patent, 5:9-13; *see also* '890 patent, 2:59-62 ("The invention is thus a test enabled web browser that has all functionality of the parallel IE technology and which has all of the required test functionality built in and easily accessible buy a Website analyst."). But the Zoho accused products are not browsers at all, do not include a browser and much less an emulated browser or test-enabled browser. In fact, Zoho does not provide components or computer code with web browsing and/or webpage accessing capabilities as part of its products and services to customers. As such, the accused Zoho products cannot infringe any claim of the asserted SRI patents.

The patents-in-suit also appear to be invalid and unenforceable. SRI admitted to the U.S. Patent Office and in filings in prior cases that it advertised, offered for sale, and sold products that included the patented technology before applying for patent protection. Discovery in this case will require disclosure about the actual timing of the release of these products and the functionality they had upon release, which Zoho believes will contradict the self-serving statements SRI has made in court filings and less-than-complete disclosures to the U.S. Patent Office, which SRI has hid behind

1  for going on 20 years. The unavoidable fact is that SRI's pre-critical date public sales and disclosures
2  are prior art against all of the asserted patents. Zoho will show that at least those public disclosures,
3  alone or in combination with other prior art references, invalidate all of the asserted claims in this
4  suit.

5  **3.   LEGAL ISSUES**

6   The Parties anticipate that the key factual and legal issues in this action will be:

7   A.   The meaning and scope of the terms recited in the claims of the Asserted Patents;

8   B.   Whether Defendants have directly infringed, either literally or under the doctrine
9        of equivalents, any claim of the Asserted Patents;

10  C.   Whether Defendants have induced others to infringe and/or contributed to others'
11       infringement of the Asserted Patents;

12  D.   Whether Defendants' infringement has been willful (pursuant to SRI's upcoming,
13       unopposed Motion to Amend its Complaint);

14  E.   Whether Plaintiff is entitled to injunctive relief;

15  F.   The amount and type of damages awardable to Plaintiff; and

16  G.   Whether either party is entitled to attorney's fees pursuant to 35 U.S.C. § 285; and

17  H.   Whether the Asserted Patents are valid and enforceable.

18 **4.   MOTIONS**

19  The parties anticipate filing any necessary discovery motions, motions for summary judgment
20 regarding infringement and validity, and pre-trial motions as appropriate.

21 **5.   AMENDMENT OF PLEADINGS**

22  The Parties propose May 1, 2023 for the deadline to amend the pleadings.

23 **6.   EVIDENCE PRESERVATION**

24  The Parties certify that they have reviewed the Guidelines Relating to the Discovery of
25 Electronically Stored Information ("ESI Guidelines") and confirm that they met and conferred
26 pursuant to Fed. R. Civ. P. 26(f) and that each of them has implemented a litigation hold.

27
28

7. **DISCLOSURES**

The parties will make their initial disclosures pursuant to Rule 26(a)(1) consistent with the proposed schedule below.

8. **DISCOVERY**

The Parties anticipate discovery relevant to infringement, willfulness, damages, validity, and enforceability.

The Parties suggests that the timing of and limits on discovery be governed by the Federal Rules of Civil Procedure and the Local Rules of this Court, with the following exceptions:

1. **Method of Service**: The Parties consent to, and agree to accept, service of all documents, discovery requests and responses, and process via electronics service pursuant to FRCP 5(b)(2)(E), so long as such service is sent to:
   - for service on SRI: SRI.service@singercashman.com
   - for service on Zoho: ryan@martonribera.com; phil@martonribera.com; hector@martonribera.com; songmee@martonribera.com; carolyn@martonribera.com

2. **Protective order**: The Parties will meet and confer on a proposed Stipulated Protective Order and ESI Order, which they will submit to the Court.

3. **Depositions**: The parties agree that all depositions of the Parties or officers, employees, or agents thereof, will take place either (a) in this judicial district; or (b) remotely (*e.g.*, via Zoom).

9. **CLASS ACTIONS**

This is not a class action.

10. **RELATED CASES**

There are no related cases or proceedings.

11. **RELIEF**

SRI's Position:

SRI seeks monetary damages for Defendants' past and present infringement adequate to compensate it for Defendants' infringement, as well as a permanent injunction preventing Defendants

from continuing those activities. With respect to the monetary damages, SRI is seeking recovery in amount equal to its lost profits, plus Defendants' ill-gotten gains. SRI will be able to state those amounts with precision after it has had discovery of Defendants' financial and sales records. In the alternative and in any event, SRI seeks recovery in an amount no less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the court, pursuant to 35 U.S.C. § 284.

As discovery has not yet begun, at this time SRI is not in a position to provide even a good-faith estimate as to the potential damages in this matter. SRI will be able to provide a reasonable, good-faith estimate thereof following Defendants' fulsome answers to SRI's upcoming Rule 33 and 34 discovery requests.

Subject to the foregoing, a reasonable royalty in this case may be in the range of up to 10% of Defendants' relevant revenues, plus a 10% running royalty for future infringement. SRI cannot provide even an estimate as to its lost profits (which would be based on factors including but not limited to Defendants' unit sales) at this time.

Defendants are not seeking any damages from Plaintiff.

Zoho's Position:

Zoho denies that SRI is entitled to any of the relief that SRI seeks. Zoho seeks recovery of its fees and costs expended defending this meritless case.

**12.   SETTLEMENT AND ADR**

The parties have not yet engaged in settlement discussions.

The parties intend to stipulate to private mediation

**13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

At least one of the Parties declines to proceed for all purposes before a magistrate judge.

**14.   OTHER REFERENCES**

The Parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.



1  **15.   NARROWING OF ISSUES**

2  The Parties have not yet discussed narrowing the issues in the case, but plan to initiate such a
3  discussion as discovery progresses.

4  **16.   EXPEDITED TRIAL PROCEDURE**

5  The Parties do not believe that this action could be handled under the Expedited Trial
6  Procedure of General Order 64.

7  **17.   SCHEDULING**

8  The Parties propose the schedules set forth below.  For dates after the Claim Construction
9  Hearing, the Parties propose that the Court set a further Case Management Conference when it issues
10 its claim construction order.  At that further CMC, the parties can provide their proposals for the
11 schedule for the remainder of the case.

12 SRI's Position:

13 SRI proposes that the parties follow the schedule set forth in the Patent Local Rules
14 ("P.L.R.").  Zoho has not shown good cause to deviate from that standard, especially where Zoho
15 admits to knowledge of the patents-in-suit at least as of "almost two years" ago.  *See supra*, Section
16 II.  While SRI originally suggested the parties follow the schedule contemplated by the P.L.R. (as in
17 SRI's current position), SRI sought to compromise with Zoho and offered to agree that Zoho could
18 have 15 extra days (instead of the 30 it originally requested) to complete its Invalidity Contentions,
19 and that the remainder of deadlines would then follow the Patent Local Rules.  Zoho refused that
20 compromise.  Zoho has not shown good cause for its proposed departure from the P.L.R. and its
21 proposal should be rejected.

22 Zoho's Position:

23 Zoho proposes an additional 30 days for its invalidity contentions in light of the complexities
24 arising from the fact that this is a seven-patent case with as many as 164 claims.  *See* Patent L.R. 1-3;
25 *see, e.g.*, Order Granting in Part and Denying in Part Administrative Mot. to Extend Deadline and
26 Enlarge Page Limits, *24/7 Customer, Inc. v. Liveperson, Inc.*, No. 15-CV-02897-JST(KAW), (N.D.
27 Cal. April 15, 2016) (extending time for invalidity contentions by 6 weeks in 13 patent case).  SRI
28 has indicated that it opposes Zoho's request for extra time on the grounds that it is prejudiced by such

an extension, but this claim is belied by the fact that several of the patents-in-suit have already expired, the accused products date back many years, and SRI has already waited years to bring this action. To address concerns raised by SRI during the conference of counsel, Zoho is willing to produce its technical and other materials required by Patent L.R. 3-4 on that date proposed by SRI.

| Event | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Deadline for Initial Disclosures | January 17, 2023 | January 17, 2023 |
| Deadline for Plaintiff's Patent L.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions and Patent L.R. 3-2 Document Production | As set forth in P.L.R. 3-1 and 3-2 (February 2, 2023) | February 2, 2023 |
| Deadline for Defendant's Patent L.R. 3-4 Document Production | As set forth in P.L.R. 3-4 (March 20, 2023) | March 20, 2023, except for Patent L.R. 3-4(b) documents (prior art), which will be produced with Invalidity Contentions |
| Deadline for disclosure of Defendant's Patent L.R. 3-3 Invalidity Contentions | As set forth in P.L.R. 3-3 (March 20, 2023) | April 18, 2023 |
| Deadline to seek leave to amend pleadings, add new parties, bring new cases, bring third party claims or cross claims | May 1, 2023 | May 1, 2023 |
| Deadline for disclosure of Plaintiff's Damages Contentions | As set forth in P.L.R. 3-8 (May 9, 2023) | May 23, 2023 |
| Deadline for disclosures of Defendant's Responsive Damages Contentions | As set forth in P.L.R. 3-9 (June 8, 2023) | June 22, 2023 |
| Deadline to complete ADR | 90 days from issuance of ADR Referral Order | 90 days from issuance of ADR Referral Order |
| Exchange of claim terms for | As set forth in P.L.R. 4-1 | May 2, 2023 |

| Event | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| construction | (April 3, 2023) | |
| Exchange of preliminary claim constructions and extrinsic evidence | As set forth in P.L.R. 4-2 (April 24, 2023) | May 23, 2023 |
| Joint Claim Construction Chart and Prehearing Statement | As set forth in P.L.R. 4-3 (May 19, 2023) | June 19, 2023 |
| Claim Construction Discovery Closes | As set forth in P.L.R. 4-4 (June 19, 2023) | July 19, 2023 |
| Plaintiff's Claim Construction Brief Due | As set forth in P.L.R. 4-5(a) (July 5, 2023) | August 3, 2023 |
| Defendant's Claim Construction Opposition Due | As set forth in P.L.R. 4-5(b) (July 19, 2023) | August 17, 2023 |
| Plaintiff's Claim Construction Reply Brief due | As set forth in P.L.R. 4-5(c) (July 26, 2023) | August 24, 2023 |
| Claim Construction Hearing | As set forth in P.L.R. 4-6 (August 9, 2023, or as soon thereafter as convenient for the Court) | September 7, 2023, or as soon thereafter as convenient for the Court |
| Fact Discovery Cut-Off | To be determined at Case Management Conference following issuance of claim construction order | To be determined at Case Management Conference following issuance of claim construction order |
| Disclosure of Opening Expert Report(s) | To be determined at Case Management Conference following issuance of claim construction order | To be determined at Case Management Conference following issuance of claim construction order |
| Disclosure of Rebuttal Expert Report(s) | To be determined at Case Management Conference | To be determined at Case Management Conference |

| Event | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| | following issuance of claim construction order | following issuance of claim construction order |
| Disclosure of Reply Expert Report(s) | To be determined at Case Management Conference following issuance of claim construction order | To be determined at Case Management Conference following issuance of claim construction order |
| Expert Discovery Closes Regarding Invalidity and Unenforceability | To be determined at Case Management Conference following issuance of claim construction order | To be determined at Case Management Conference following issuance of claim construction order |
| Last Day to File Dispositive Motions | To be determined at Case Management Conference following issuance of claim construction order | To be determined at Case Management Conference following issuance of claim construction order |

18. **FORMAT OF TECHNOLOGY TUTORIAL AND CLAIM CONSTRUCTION**

To the extent the Court believes a technology tutorial would be helpful in deciding the issues to be presented at claim construction, the parties jointly propose that such a tutorial be given by counsel from both sides on the morning of the claim construction hearing, or any other time convenient for the Court.

The parties jointly propose that no live testimony will be given at the claim construction hearing. The parties further jointly propose that the claim construction hearing should proceed term-by-term, with each side presenting its position on each term before proceeding to the next term, and that the parties will alternate which side will begin arguing each term.

19. **TRIAL**

Both parties have demanded trial by jury for all issues so triable. The parties jointly estimate they would need approximately 5–7 days for trial in this matter.

20. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The Parties have disclosed non-party interested entities pursuant to Fed. R. Civ. P. 7.1 and Civil L.R. 3-16.

**21.  PROFESSIONAL CONDUCT**

The Parties' counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**22.  OTHER MATTERS AFFECTING DISPOSITION OF THIS MATTER**

At this time, there are no other matters to address that may facilitate the just, speedy, and inexpensive disposition of this matter.

Respectfully submitted,

SINGER CASHMAN LLP

Date:  January 12, 2023         By:   */s/ Evan Budaj*
                                Benjamin L. Singer
                                Evan Budaj
                                Attorneys for Plaintiff Software Research, Inc.

Date:  January 12, 2023         By:   */s/ Ryan Marton*
                                RYAN J. MARTON
                                CAROLYN CHANG
                                PHILLIP J. HAACK

                                Attorneys for Defendant
                                ZOHO CORPORATION

**Attestation Regarding Signatures**

I, Evan Budaj, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Date:  January 12, 2023          */s/ Evan Budaj*
                                Evan Budaj

